UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STACY VENABLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-07-168-B-W |
| | ) | |
| T-MOBILE USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE
RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

The United States Magistrate Judge filed with the Court on November 14, 2008 her Recommended Decision (Docket # 42) (*Rec. Dec.*). The Defendant T-Mobile USA, Inc. (T-Mobile) filed its objection to the Recommended Decision on December 4, 2008 (Docket # 44) (*Def.'s Obj.*) and the Plaintiff Stacy Venable filed her response on December 11, 2008 (Docket # 45) (*Pl.'s Resp.*). The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and, it concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision.

**I.   DISCUSSION**

In her Recommended Decision, the Magistrate Judge recommended that the Court deny T-Mobile's motion for summary judgment on Plaintiff's action alleging violations of the Maine Human Rights Act (MHRA). Ms. Venable is proceeding on two theories under the MHRA: (1) wrongful denial of a reasonable accommodation; and, (2) discriminatory discharge. T-Mobile

contests three areas of the Magistrate Judge's recommendation: (1) Ms. Venable's ability to perform the essential functions of her job; (2) the existence of a reasonable accommodation; and, (3) Ms. Venable's showing that T-Mobile's explanation for her termination was pretextual.[1]

### A.     Qualified to Perform Essential Functions

To succeed on either theory, Ms. Venable must show that she was qualified to perform the essential functions of her job with or without a reasonable accommodation. *Rios-Jimenez v. Sec'y of Veterans Affairs*, 520 F.3d 31, 41 (1st Cir. 2008).[2] Ms. Venable was employed as a trainer at T-Mobile. Among other skills, the T-Mobile trainer job description includes as a required qualification the "[a]bility to build rapport with others and create a team environment." *Statement Material Facts in Support of Def.'s Mot. for Summ. J.* (Docket # 30) (*DSMF*) at Attach. 2 at 22 (Docket # 30-3). T-Mobile contends that, unrelated to her epilepsy medication, Ms. Venable is unable to perform this essential function of her job and concludes that she is not a qualified individual under the MHRA.

As evidence, T-Mobile cites Ms. Venable's agreement that she is "abrasively honest" and "upfront"; her admission that she has a hard time hiding her feelings and experiences difficulty dealing with people who do not like her; her "making faces" or expressions during team meetings; her receipt of an "unacceptable" rating in the performance category of "Practice Team Together Team Apart" in her T-Mobile performance evaluation for 2005; her tendency, noted in the 2005 evaluation, to show frustration with facial expressions and disparaging remarks; her

---

[1] The Court has not reiterated the details of the case, which are fully set forth in the Magistrate Judge's Recommended Decision. *Rec. Dec.* at 2-10.

[2] "'Because the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA.'" *Webber v. Int'l Paper Co.*, 326 F. Supp. 2d 160, 165 (D. Me. 2004) (quoting *Winston v. Me. Technical Coll. Sys.*, 631 A.2d 70, 74 (Me. 1993)); *see also Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295, 303 n.3 (D. Me. 2008) (noting that "Maine courts apply the MHRA in accordance with federal anti-discrimination law"). Despite some differences between the Maine and federal acts, this interpretive principle remains viable particularly as regards congruent provisions of state and federal statutory law. *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, 895 A.2d 309.

disrespectful comments about human resources in August 2005; and, her receipt in 2005 and during the 2005 evaluation process of coaching and counseling related to her office interactions and personal accountability. *Def.'s Obj.* at 5-6.

T-Mobile strenuously argues that it, not the Court, has the legal authority to define the essential functions of Ms. Venable's employment position and it, not the Court, has the legal authority to determine whether an employee is meeting its employment expectations. It cites 42 U.S.C. § 12111(8) as stating that the "employer's judgment governs a determination of what functions of plaintiff's job are 'essential,'" *Def.'s Obj.* at 3, and *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 25 (1st Cir. 2002), for the proposition that "courts must pay heed to an employer's judgment as to what functions of a job are essential." *Def.'s Obj.* at 4. T-Mobile says that it defined the essential functions of Ms. Venable's position to include personal qualities she has admitted she simply does not possess, such as the ability to work within a team, to build rapport with others, and to avoid acting in a rude, disrespectful, or abrasive manner. *Id.* at 3-6.

T-Mobile quotes the familiar teaching of the First Circuit that "[c]ourts may not sit as super personnel departments, assessing the merits—or even rationality—of employers' nondiscriminatory business decisions." *Id.* at 8-9 (quoting *Boyajian*, 587 F. Supp. 2d at 305); *Mesnick v. General Electric Co.*, 950 F.2d 816, 825 (1st Cir. 1991). T-Mobile points to its employee evaluation of Ms. Venable in January 2006 in which it ranked her as "unacceptable" in the performance category of "Practice Team Together Team Apart" and criticized her for openly showing frustration when faced with difficult situations or decisions. *DSMF* ¶¶ 72-73. T-Mobile concludes that the Court should not—indeed cannot—second guess its considered conclusion that Ms. Venable was not meeting its job expectations and to rule otherwise would be to act as a super personnel department in violation of First Circuit law. In effect, so long as the

employer could point to some flaw in an employee's performance that it can cast as failing an essential function, T-Mobile would have its decision to terminate the employee be immune from judicial review.

However, to accept T-Mobile's position would effectively eliminate all but the most egregious instances of employment discrimination, and it turns out that T-Mobile substantially overstates the degree of deference a court owes an employer's range of discretion. The statute does not say that the "employer's judgment governs a determination of what functions of plaintiff's job are 'essential.'" *Def.'s Obj.* at 3. The statute says that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). The court must consider the employer's judgment, but it is inaccurate to say that the employer's judgment governs the court's consideration. Thus, although T-Mobile accurately cites *Gillen* as requiring the court to "pay heed" to an employer's determination of what is an essential function of the job, T-Mobile ignores the *Gillen* Court's statement that "the employer's good-faith view of what a job entails, though important, is not dispositive." *Gillen*, 283 F.3d at 25; *Ward v. Mass. Health Research Inst.*, 209 F.3d 29, 34 (1st Cir. 2000) (noting that an employer's view of job requirements generally should be given "substantial weight," but it is "only one factor" in the mix); *EEOC v. Amego, Inc.*, 110 F.3d 135, 144 (1st Cir. 1997). Boiled down, T-Mobile would require an employee to produce direct evidence of unlawful motive and that is simply put, not the law. *DeCaire v. Mukasey*, 530 F.3d 1, 20 (1st Cir. 2008).

It is true that T-Mobile described Ms. Venable's performance as unacceptable in one category in its January 2006 evaluation. *DSMF* ¶ 72. But, it is also true that T-Mobile did not then terminate Ms. Venable or even begin a stepped discipline process. Instead, her training manager, Todd Hicks, "developed a set of goals for Plaintiff focused primarily on her

interactions with others, and her need to take accountability for her dealing with difficult students." *Id.* ¶ 74. T-Mobile characterized Mr. Hicks's comments to Ms. Venable in January 2006 as "coaching." ¶¶ 79-80. Coachable flaws in January somehow became intolerable employment deficiencies by June, and Ms. Venable is entitled to attempt to persuade a jury that the critical difference was her predicted response to Topomax and T-Mobile's refusal to make a reasonable accommodation for her disability.

As the Magistrate Judge concluded, "[a]dditional evidence in the record can support a finding that T-Mobile is being hyperbolic about Venable's pre-Topomax demeanor and conduct for the sake of litigation."[3] *Rec. Dec.* at 19. Most notable is Ms. Venable's designation by Mr. Hicks—Ms. Venable's training manager at T-Mobile and the person who coached and counseled Ms. Venable in 2005, and later completed her performance evaluation for that year—as "Trainer of the Month" in January 2006, a period when Ms. Venable was having conflict with some of her trainees.

The timing of the award allows at least two inferences. A jury might reasonably conclude that, despite Ms. Venable's unrestrained personality, T-Mobile regarded her as meeting (and, in fact, exceeding) the essential functions of her position, including her role as team-builder. Alternatively, a jury might find that, in practice as opposed to official policy, T-Mobile did not view team building as an essential function of the trainer position and so Ms. Venable's deficiencies in this area did not disqualify her from recognition. *See Laurin v. Providence Hosp.*, 150 F.3d 52, 59 (1st Cir. 1998) (finding shift-rotation was an essential function for non-senior

---

[3] As the Recommended Decision describes, Ms. Venable was diagnosed with epilepsy after sustaining two seizures on November 4, 2005. *Rec. Dec.* at 4. Her treating physician prescribed a number of different medications, each of which caused side effects. *Id.* at 4-6. On May 12, 2006, she began taking Topomax, an epilepsy medication. *Id.* at 6. There is evidence that Ms. Venable had a relatively common adverse reaction to Topomax, which included mood instability and disinhibition. *Id.* at 10. Because T-Mobile argued that the case was not about Ms. Venable's reaction to Topomax, but her long-term pattern of misconduct, the Magistrate Judge differentiated between the pre- and post-Topomax periods. *Id.* at 18-19.

5

staff nurses where defendant hospital had "*always* required *all* non-senior staff nurses to rotate shifts, and [had] *never* made an exception"); *see also Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995) ("The initial inquiry in determining whether a job requisite is essential is whether an employer actually requires all employees in the particular position to perform the allegedly essential function."); *Taylor v. Rice*, 451 F.3d 898, 907 (D.C. Cir. 2006) (concluding that issues of fact regarding job's essential functions precluded summary judgment for employer because the record showed that, in practice, employer did not require all employees to abide by claimed essential function). Both inferences find additional support from record evidence that T-Mobile never formally disciplined Ms. Venable for her performance.

None of this is to say that T-Mobile will be unable to convince a jury that its decision to terminate Ms. Venable in June should be accorded deference. Taken in the light most favorable to the Plaintiff, however, the record allows a reasonable inference that, prior to initiation of her Topomax treatment, she was able to perform the "team builder" and all other essential functions of the trainer position.

### B.    Reasonable Accommodation – Ability to Accommodate

Plaintiff's reasonable accommodation claim requires that she show that her proposed accommodation would enable her to perform the essential functions of her job. *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102-03 (1st Cir. 2007). T-Mobile challenges whether it is reasonable to infer that a leave of absence would have allowed Ms. Venable to continue to meet the essential functions of her position after her return.[4] Again, T-Mobile focuses on the "team builder" function, contending that a leave of absence could not have succeeded because

---

[4] At oral argument, T-Mobile conceded that granting Ms. Venable a leave of absence would not have imposed an undue hardship on the company. *See Freadman*, 484 F.3d at 103. This concession is consistent with T-Mobile's statement of material facts which confirms that several other trainers were available to take over Ms. Venable's class had she received a leave. *See DSMF* ¶¶ 135-139.

Ms. Venable's problem was her personality, and her personality remained more or less constant throughout her time at T-Mobile, both prior to and during her Topomax period. *Def.'s Obj.* at 10-12.

The record, however, also supports a contrary finding. A jury could conclude, based on the trainer of the month designation, that Ms. Venable's overall job performance during her pre-Topomax period was not merely adequate, but exemplary. In contrast, the record supports a finding that Ms. Venable's job performance suffered significantly after she began taking Topomax. She experienced heightened aggression and "snappishness" and, for the first time, she had a class of trainees that seriously underperformed. *See Rec. Dec.* at 19. Her prescribing doctor, anticipating the possibility of such side effects, recommended a leave of absence. *Id.* Finally, her current doctor, also her expert witness, has expressed the opinion that these side effects can resolve over time. *Id.*[5] Taken together, this record evidence allows an inference that, if Ms. Venable had been allowed to take the requested leave of absence, she would have been able to return to her position and resume a high-level of performance.[6]

### C. Disability Discrimination - Pretext

Once a plaintiff has established a prima facie case of disability discrimination and the defendant has responded with a legitimate, non-discriminatory justification for its employment decision, the burden returns to the plaintiff to demonstrate that the defendant's articulated justification is pretextual and that the defendant's action was in fact motivated by prohibited discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Garcia v. Bristol-*

---

[5] T-Mobile objects to the Magistrate Judge's exclusion from the summary judgment record its proposed material fact 111. *Def.'s Obj.* at 11. The Court agrees with the Magistrate Judge that the record does not support the statement, and rejects Defendant's request to find that Plaintiff should be found to have admitted it because she failed to specifically use the word "denied." *See Rec. Dec.* at 13-14.

[6] In a footnote, T-Mobile asserts that Ms. Venable's request for an accommodation was insufficiently direct and specific. *Def.'s Obj.* at 10 n.5. The Court agrees with the Magistrate Judge to the contrary. *See Rec. Dec.* at 20.

7

*Myers Squibb Co.*, 535 F.3d 23, 30 n.2 (1st Cir. 2008). T-Mobile objects to the Magistrate Judge's conclusion that a reasonable factfinder could find that T-Mobile's stated reason for terminating Ms. Venable was pretextual and masked discriminatory animus. *Def.'s Obj.* at 6-9.

"A plaintiff can demonstrate that an employer's stated reasons are pretextual 'in any number of ways.'" *Garcia*, 535 F.3d at 31 (quoting *Ugurhan Akturk Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003)); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55-57 (1st Cir. 2000); *Webber*, 326 F. Supp. 2d at 166-67. One method is to show that the defendant's nondiscriminatory reasons for terminating an employee were "after-the-fact justifications, provided subsequent to the beginning of legal action." *Santiago-Ramos*, 217 F.3d at 56. T-Mobile's explanation for its termination decision has shifted. On June 8, 2006, the date of Ms. Venable's dismissal, Todd Hicks told her that she was being terminated because "it's just not working out." *Pl.'s Opp'n to Def.'s Statement of Material Facts & Statement of Additional Facts* ¶ 193 (Docket # 35) (*PSMF*). However, the T-Mobile separation form at around the same time lists the "separation reason" as "unsatisfactory performance." *DSMF* at Attach. 3 at 71 (Docket # 30-4) (*Hicks Dep. & Exs.*). Another page of the form, apparently a copy of an internal T-Mobile email sent on June 9, 2006, includes a one-line message: "Job fit, performance and living the values." *Id.* at 74. On June 27, 2006, in a fax to the Maine Bureau of Unemployment Compensation, T-Mobile indicated that Ms. Venable was discharged for unsatisfactory job performance, stating that "[t]here was no misconduct involved." *PSMF* at Attach. 1 at 3 (Docket # 35-2).[7] T-Mobile's explanation changed six months later, after Ms. Venable filed a complaint

---

[7] At oral argument, T-Mobile asserted that the fax is inadmissible as a matter of law and therefore should not be considered in ruling on summary judgment. T-Mobile claimed that because the Unemployment Board's decision is inadmissible, an employer's letter to the Board would be inadmissible too.

T-Mobile, however, waived this objection for purposes of the pending motion. On September 11, 2008, Ms. Venable posited the following in her statement of material fact 198: "When Stacy Venable filed a claim for unemployment benefits after her termination by T-Mobile, T-Mobile provided the following information to the Bureau of Unemployment Compensation: 'The claimant was discharged for unsatisfactory job performance. There

before the Maine Human Rights Commission (MHRC). On December 12, 2006, in an affidavit prepared for submission to the MHRC, Mr. Hicks represented that "Stacy was separated for misconduct." *Hicks Dep. & Exs.* at 75. In its statement of material facts submitted in support of its pending motion, T-Mobile maintains this latest rationale was the true one:

> Plaintiff was terminated for misconduct. . . . Mr. Hicks decided to terminate Plaintiff because of her failure to improve how she conducted herself toward her students and her peers and because he believed it was apparent that Plaintiff's improper behavior was not going to change.

*DSMF* ¶¶ 107-08.

T-Mobile seeks to diminish these inconsistencies by arguing that its internal standard for misconduct differs from the Maine Bureau of Unemployment Compensation standard. *Def.'s Obj.* at 8 n.4 (quoting *Forbes-Lilley v. Maine Unemployment Insurance Commission*, 643 A.2d 377, 379 (Me. 1994), for the proposition that "violation of a company rule does not necessarily rise to the level of statutory misconduct"). This explanation is incomplete. It does not explain

---

was no misconduct involved.'" *PSMF* ¶ 198. T-Mobile objected to the statement, but only on the ground that it is "not material to the issue of Plaintiff's behavior during her employment with T-Mobile and whether Plaintiff was terminated for her admitted misconduct as that misconduct is defined by T-Mobile." *Def.'s Objs. to Pl.'s Opp'n to Def.'s Statement of Material Facts & Def.'s Reply to Pl.'s Statement of Additional Facts* ¶ 198. T-Mobile failed to raise its evidentiary objection before oral argument. Once waived before the magistrate judge, a party may not revive an issue by belatedly pressing it on objection to the district court. *Fireman's Ins. Co. v. Todesca Equip. Co.*, 310 F.3d 32, 38 (1st Cir. 2002); *Borden v. Sec'y of Health & Human Serv.*, 836 F.2d 4, 6 (1st Cir. 1987) (stating that "[p]arties must take before the magistrate, 'not only their best shot but all of their shots.'") (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984)).

　　Further, T-Mobile is mistaken. As T-Mobile counsel conceded, the fax was sent on behalf of T-Mobile by a company called Talx or UCExpress. *See PSMF* ¶ 198 n.1. Accordingly, it is likely admissible as an admission by a party-opponent. *See* Fed. R. Evid. 801 ("A statement is not hearsay if . . . [t[he statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .").

　　Moreover, even if T-Mobile were correct, there remains other admissible evidence of T-Mobile's shifting rationale, specifically the difference between the termination reason offered by Mr. Hicks to Ms. Venable on June 8, 2006, the reasons articulated in her separation form, and the reason later presented to the Maine Human Rights Commission and now offered in the pending lawsuit.

　　T-Mobile also argued that "misconduct" is a term of art and that it is standard practice, outside of extreme situations, for employers to represent to the Maine Bureau of Unemployment Compensation an alternative explanation for dismissal because reporting misconduct will result in delay in the terminated employee's receipt of unemployment benefits. T-Mobile's construction of the document may yet convince a jury, but it does not make the document inadmissible. Finally, none of this explains why its representation to Ms. Venable and its internal separation form failed to mention misconduct.

why Ms. Venable's separation form, apparently an internal T-Mobile document, makes no mention of misconduct.  Moreover, T-Mobile's argument assumes that a jury would necessarily agree with T-Mobile's explanation for its shifting rationale for termination.  On this evidence, a jury could as easily conclude that T-Mobile's rationale has shifted in order to mask the true discriminatory animus underlying its termination decision.

Another method to establish pretext is to show "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'"  *Santiago-Ramos*, 217 F.3d at 56 (quoting *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998)).  To this end, Ms. Venable argues that, despite her alleged misconduct, not only was she never formally disciplined, she was recognized as the first-ever trainer of the month.

On the first point, the First Circuit has instructed that "pretext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices."  *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 68-69 (1st Cir. 2008); *Boyajian*, 587 F. Supp. 2d at 306.  It is the plaintiff's obligation to adduce competent evidence establishing the standard policy or practice.  *Kouvchinov*, 537 F.3d at 68-69.  Here, Ms. Venable introduced her own sworn affidavit attesting to T-Mobile's corrective-action policy.  *PSMF* at Attach. 2 ¶ 45 (Docket # 35-3). In addition, Mr. Hicks's testimony supports a finding that T-Mobile has a policy of documenting in writing more serious problems. *See Hicks Dep. & Exs.* at 7 at 23:1-25, 24:21-25, 25:1-17.  In the case of Ms. Venable, outside a few scattered comments in her largely positive work evaluations, there is no evidence that her purported misconduct was recorded by T-Mobile.  Accordingly, a jury could reasonably conclude that T-Mobile did not view it as

particularly severe at the time, and could infer that her alleged misconduct was not the actual reason for termination.[8]

This is not to say that a jury would be compelled to accept Ms. Venable's argument that T-Mobile deviated from a standard personnel practice. "[W]here an employer's approach to personnel matters is flexible or discretionary, there is by definition no standard practice from which to deviate." *Kouvchinov*, 537 F.3d at 69. In his deposition, Mr. Hicks also generally describes a flexible approach to discipline at T-Mobile. *See Hicks Dep. & Exs.* at 7 at 23:1-25, 24:21-25, 25:1-17. The issue now is not whether Ms. Venable's arguments will ultimately be convincing, but whether she is entitled to make the argument at all to a factfinder.

T-Mobile's designation in January 2006 of Ms. Venable as its first-ever trainer of the month and its termination of her in June 2006 pose an insurmountable hurdle for success on its motion for summary judgment. T-Mobile protests vigorously that Ms. Venable has a "long history of abrasive, rude and disrespectful treatment of her co-workers and the students she was supposed to train." *Def.'s Obj.* at 1. Indeed, T-Mobile now claims that the "Plaintiff admits to committing this misconduct throughout her employment, and that this was in direct conflict with the essential function of her job as a role model for T-Mobile's core values." *Id.* Yet, T-Mobile recognized Ms. Venable with all her flaws as its trainer of the month in January. Thus, personality traits worthy of commendation in January deserved dismissal in June. No matter

---

[8] At oral argument, counsel for Ms. Venable argued that the Second Circuit as well as the Sixth Circuit or the Seventh Circuit have held that a defendant's failure to follow its progressive discipline policy creates an inference of discriminatory animus. The Court's research, however, suggests that such evidence without more will not always suffice to survive summary judgment. *See, e.g.*, *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 402-03 (7th Cir. 1992) (affirming summary judgment where plaintiff failed to establish pretext despite adducing evidence that defendant employer did not strictly follow its progressive discipline policy); *Jordan v. Olsten Corp.*, 25 Fed. Appx. 45, 47 (2d Cir. 2001) (affirming summary judgment where plaintiff offered "no evidence that progressive discipline was the required or even the normal procedure for transgressions such as hers"); *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed. Appx. 387, 395 (6th Cir. 2005) (reversing district court grant of summary judgment where evidence presented by the plaintiff, including evidence that the defendant did not strictly follow its demotion policies, "barely qualifie[d] to demonstrate pretext"). Here, T-Mobile's failure to formally discipline Ms. Venable is one of several indicia of pretext.

11

how T-Mobile seeks to spin this evidence, Ms. Venable has presented a genuine issue of material fact as to whether the real reason for her discharge was her personality.

A plaintiff's "prima facie case together with sufficient evidence of pretext could be enough to support an inference of discrimination." *Currier v. United Techs. Corp.*, 393 F.3d 246, 255 (1st Cir. 2004); *Boyajian*, 587 F. Supp. 2d at 304. Here, the temporal proximity between the time Ms. Venable began taking Topomax and her termination is less than thirty days. When her doctor recommended Topomax, Ms. Venable become concerned about potential side effects, including aggression, agitation, disorientation, and confusion. Ms. Venable sought a second opinion, and the second doctor also recommended Topomax, but recommended that she take a leave of absence for six weeks to become acclimated to the new medicine. Ms. Venable began Topomax on May 12, 2006 and asked for a leave of absence the same day. T-Mobile denied her the leave of absence and terminated her on June 8, 2006. Between May 12, 2006 and June 8, 2006, Ms. Venable experienced many of the predicted side effects. "[C]hronological proximity does not by itself establish causality, particularly if 'the larger picture undercuts any claim of causation.'" *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) (quoting *Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)). In this case, however, the larger picture, including other circumstantial evidence of pretext, allows a finding of discriminatory animus.

Returning to the super personnel department argument, T-Mobile again insists that the Magistrate Judge "misapplies the First Circuit's pretext standard." *Def.'s Obj.* at 2, 8-9 (citing *Boyajian*, 587 F. Supp. 2d at 305, and *Mesnick*, 950 F.2d at 825). As earlier discussed, it is certainly true that courts cannot impose their own management preferences on defendants, but T-Mobile's strenuous contentions on this point gloss over the narrow question now before the

Court: whether Ms. Venable has "created a triable issue of fact." *Mesnick*, 950 F.2d at 825. The Court recently discussed *DeCaire v. Mukasey*, 530 F.3d 1 (1st Cir. 2008), where the First Circuit addressed the burden on a plaintiff in a discrimination suit following *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000):

> [In *DeCaire*, t]he First Circuit noted it remains '*permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's [explanation].' [*DeCaire*, 530 F.3d at 19 (quoting *Reeves*, 530 U.S. at 147)]. On the other hand, 'there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.' *Id.* at 19-20 (quoting *Reeves*, 530 U.S. at 148). But, *DeCaire* made it clear that it was error to require the plaintiff 'to present evidence beyond disproving the [defendant's] arguments as pretext.' *Id.* at 20.

*Rhoades v. Camden Nat'l Corp.*, 575 F. Supp. 2d 260, 263 (D. Me. 2008). As *DeCaire* reiterated, the First Circuit has long recognized that the "resultant burden can be carried without direct proof of discrimination[;] requiring the plaintiff to show that the employer's reason is a pretext for [] discrimination comports with the principle that a plaintiff should not be required to produce 'smoking gun' evidence before prevailing in a discrimination suit." *Mesnick*, 950 F.2d at 824.

Here, based on T-Mobile's varying termination explanations, its failure to take any prior disciplinary action against Ms. Venable during her tenure at the company, its claim that its termination decision was based on longstanding personality flaws, when six months earlier it had named Ms. Venable the trainer of the month, and the close temporal proximity between her beginning Topomax, the ensuing side effects, and her termination, a trier of fact could reasonably conclude that T-Mobile's explanation for terminating Ms. Venable is pretextual. In sum, this accumulated evidence allows an inference of discriminatory animus sufficient to survive summary judgment.

## II. CONCLUSION

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge (Docket # 42) is hereby AFFIRMED. It is further ORDERED that T-Mobile USA, Inc.'s Motion for Summary Judgment (Docket # 29) is hereby DENIED.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2009